Move to the first case for argument this morning, and that is the case of Rainey v. Secretary of the Department, and we'll call upon Ms. Williams, who appears to be a college student. Good morning. My name is Ayanna Williams. I represent Michael Rainey, the appellant. I'd like to reserve two minutes for rebuttal, if I may. Thank you. Mr. Rainey's right to confront the witnesses against him was violated when the detective reading his co-defendant's statement into evidence broke the redaction and clearly identified Mr. Rainey as X. Is that the only problem? That's not the only problem, but that is the primary, I think, error in this case, that the detective reading the statement broke the redaction. The Commonwealth also used the statement in opening and closing arguments to establish premeditation and intent in closing arguments. Much to the annoyance of Judge Pozzarina. Yes. During the course of the argument. Yes. And prior to recessing for the day. That's correct. As I was about to say, the prosecutor... The trial judge had something of an epiphany overnight as to just how damaging the comment was that was made during the closing argument. Right. In closing argument, the prosecutor told the jury that the statement from George Williams about X corroborated Alvin Morgan's testimony as to Michael Rainey. Well, why don't you talk about that for us with a minute. In Richardson v. Marsh, the Supreme Court says you can make inferential arguments based on a redacted confession. And the Supreme Court of Pennsylvania in Rainey III seems to say that that's exactly what happened here, so it was okay. What's the flaw in that reasoning based on Richardson's holding? I think there are two issues with that reasoning. First is that it was not a contextual implication. The prosecutor identified Mr. Rainey. In that case, I don't think Richardson is the case on which to base the... He identified Mr. Rainey. He didn't identify him by name. He said X changed his coat, and that's verified or corroborative of what you heard Mr. Morgan say. About Michael Rainey. And so what he did was say X was wearing a black leather trench coat, and that corroborates what Alvin Morgan said about Michael Rainey. And so I don't think that's a contextual implication. I think that is a direct incrimination of Michael Rainey. At some point, would you argue that even if, even if you could say that that was inferential, that once the testifying detective explicitly says the word, the name Mike, that he's worsened the situation sufficient to have actually fingered Mike Rainey? Exactly. You have in the case in chief, the detective... Essentially, it's no longer inferential. It's explicit. That's correct. That's our argument, that in the case in chief, the detective broke the redaction, and then the prosecutor in some way capitalizes on that to argue and close the argument that the statement corroborates Alvin Morgan's testimony. And to go back to Judge Jordan's question about Richardson, in Richardson, the Supreme Court remanded the case to see whether or not the prosecutor undid the redaction in his argument. And on remand, the court agreed with that interpretation and granted Marsh relief. And so in this case, we would argue that it is not a contextual implication, but a direct accusation. A direct accusation, because here's the language that the Supreme Court of Pennsylvania uses. When X came out, he had changed his coat. When he came out, he was wearing a long black leather coat corroborative of what Alvin Morgan testified to. I saw the rifle. He had it down his pants. That's the part they quote. Okay? Now, they left something out that's significant in what they quote? No, that is the language from the Williams statement. Okay. So, and that's the part they quote. Now, is your point that at that juncture, since the only person being talked about who changed the coat was Rainey, that even if Rainey's name wasn't mentioned, that was a direct enough link that nobody could have missed it? That's correct. I think if you look at the case as a whole, both Alvin Morgan and Kevin Lewis testified Mike Rainey was wearing a black leather trench coat. The Williams statement describes X as wearing the black leather trench coat. And so you could argue that that might be a contextual, but the prosecutor makes it explicit in his argument when he says that, oh, I'm sorry, that the statement corroborates what Alvin Morgan said about Michael Rainey and his black leather trench coat. But do you even need the closing? I mean, the testimony of both Williams and Morgan was that there were these three people who went down the street and were at the porch, and one of them shot the old man. And three people, three people. And the statement, even though redacted, talked about the two people and X. Yes. Well, I mean, hello? Who is X? Michael Rainey. Yeah. And don't we have cases, at least one within this circuit, that suggests that the number of potential actors here, or the number of actors, is a relevant consideration, even when dealing with the inferential nature of identification? I believe the court referred to Green. Oh. And in that case, there was the question of the number of defendants. Actually, in an earlier case, we cited in Green that I'm blanking out on, but we have said that it's a factor. That's correct. I think, and this court has also held, it's a non-precedential opinion, but in Lee v. Smale, that the use of the X redaction, where there are only two defendants, and the prosecutor argues that X is the defendant, is a violation of Bruton without reliance on Gray. Could you get to harmless there? Yeah, I was just going to say, if my colleagues have no further questions. Do you have any other questions, Judge Jordan, on Bruton-related issues? No, let's, harmless there is fine. You mentioned Lee v. Smale, so let's go there. It's a non-precedential, but it's a case where, right, despite the Bruton error, the evidence was overwhelming. How is this case different when you've got two eyewitnesses, besides William's statement, who are fingering Michael Rainey as the person who shot this elderly gentleman in the back? I think the biggest difference between our case and Lee v. Smale is that in Lee, there was a confession or an admission by the defendant that he was the perpetrator. So I think that that is the biggest difference. What do we make of the fact that on, I believe, two occasions, the Pennsylvania Supreme Court has called this overwhelming evidence of guilt? On direct appeal, I know they did. I think they did, ultimately, on appeal from the PCRA as well. That's correct. They didn't address the claim. They found that it was previously litigated, but they incorporated the reasoning from the first decision on direct appeal. What should we make of that? I think that that reasoning is unreasonable. The Pennsylvania Supreme Court decision was premised on the fact that it was a contextual implication, and so that curative instructions could cure the error. I think that, as we've said throughout our briefing, that the detective broke the redaction, that Michael Rainey was incriminated, and so that instructions couldn't cure the error. And I would disagree with the characterization that the evidence was overwhelming. Well, we have to look at the whole record here, the entire trial record, right? Yes. Why should we not, as Judge Jordan's question suggested, take account of the fact that we've got two percipient witnesses here whose statements were quite similar, in most respects, as to events both leading up to and the ultimate shot that was fired, apparently at point blank range. Why shouldn't that be enough? Because the statement went at the heart of the defense. The defense at trial was that there was no premeditation, there was no intent. The Commonwealth argued in its closing, there was. There was a plan to rob the old man up the street. The only source for that argument was the statement from Mr. Williams. But you're right that the focus was on premeditation. And that's really all that was argued was the premeditation aspect, not did he do it. And we also have the forensics that puts that shotgun, which was talked about, right up against the man's back. So, I mean, the lawyer didn't even argue that Michael Rainey wasn't the one. Would it do you any good if we thought that premeditation had not been overwhelmingly shown? I don't think it would do you any good, would it? I think that the effect on the trial is not a matter of sufficiency of the evidence. I would agree that there is. Sufficiency isn't a question. Right. But Judge Rendell has pointed to the fact that Mr. Rainey and his counsel deliberately narrowed the nature of the defense that could be offered here. Very sensibly narrowed it. Right. And so the statement undercut that defense. I think that is the harm of the statement. The statement went to the heart of the defense. Mr. Rainey argued through counsel there was no premeditation, there was no intent. The only source of evidence at trial was the statement in terms of premeditation. No, Morgan said, and Kevin said, you know, you get this picture. Morgan's with him all day, and, you know, if I've got to shoot somebody, I've got to shoot somebody. But Alvin Morgan never said that there was a plan to rob the old man up the street. Alvin Morgan across the examination was asked point blank, did you see what happened? No, I only heard a boom. Kevin Lewis said I only saw a flash. He never heard anything about a plan. The only source of the plan was the statement. But he stops and puts the bullet in the gun before he gets there. But that's not a plan necessarily to rob. They also testified that George Williams was trying to get his money back. Does it have to be a plan to rob for this to be a capital offense as it was to start with? Here, the premeditation point, there is circumstantial evidence, including the loading of the weapon. You say that all Morgan saw or heard was a boom. But without Williams' testimony, you've got the testimony of Mr. Rainey putting the gun to the man's back and firing it. And, you know, that doesn't sound like an accident or a crime of uncontrolled passion. He walked. He said, if I have to shoot somebody, I will. He loaded the gun. He walked up.  He pulled the trigger. Take the Williams' statement out of it completely if we are applying the Brecht standard, which we have to apply, right? That's correct. All right. Then what's wrong with the district court's determination here that there's not an – that this error, if it was an error, had no substantial influence on the verdict in light of those other things that exist despite the Williams' statement? I think, as I've said, that you have to look at what the defense argued and what their defense was. And that the fact that the jury found that portion of the statement, there is a plan to rob the old man up the street, significant. That's one of their jury questions. Can we hear that portion of the statement about what X said as the people up the street? But we don't know what the jury was thinking in that. We don't know what their need was. We don't know what their need was. But the fact that the statement did have some impact on the jury's decision makes – means that it was an influential effect on their decision. I may have missed something very significant in this section, but – and you and the Commonwealth can clarify this for me. Michael Rainey gave a statement to the police, right? He did. It was subject to a motion to suppress that was denied, right? That's correct. What became of the statement at trial? It was never – it was never introduced at trial. The only statement – And I didn't miss anything. No, Your Honor. It was certainly a great curiosity to me and remains so. And maybe it was a determination made by the prosecutor at the time of trial for reasons that don't appear on record. But to not have used at trial the statement of Mr. Rainey, which made significant admissions, not least of which was he put himself there, made himself one of two anyway that were up in the area of the place where the shooting occurred, seemed to me to be an astounding lacuna in the proof. We'll have you back for two minutes of rebuttal, I believe, if there are no other questions from my colleagues at this point. Thank you. Thank you, Ms. Williams. Mr. Dunleavy. Good morning. May it please the Court. My name is Ryan Dunleavy for the Commonwealth Appellees. Your Honor, I'll just focus on harmless error initially. Let's start not with harmless error but with the Bruton issue to start with, okay? Sure. You seem to have taken the position that the Commonwealth has. Who could know after Richardson? This is also confusing. But focus on what Judge Rendell asked, Ms. Williams. You've got three people in that statement. It does not take a genius to figure out by process of elimination if you're talking about Morgan and Williams and X, and the only three people that everybody in the courtroom knows are involved in this little play as the criminals are Morgan, Williams, and Rainey, that X is Rainey. Why isn't this just straight up Bruton? Forget everything else. Forget Richardson and Gray and everything that comes after. Just plain, straight old Bruton, directly and plainly speaking about Rainey. Because if you read Marsh carefully, Marsh isn't about the number of potential actors. Footnote 3, the majority explains, any of these statements, the co-defendant's confession, when it's presented at a trial, it can almost always be used as evidence that incriminates the defendant. With some kind of a circumstantial inference here, the inference is not, I mean, it's barely an inference. It's just clear on its face. There's three people, and one's name is substituted by an X. And you know it's not the other two. So there's hardly an inference. Then we get to the house, and X told me to knock on the door. But I said, no. Then Eyeball stated, knock on the door. That's when X pulled out the gun.  And X hollered out, open the door. And you have Morgan, who says that's what happened with Rainey being there. And you have Kevin saying, that's what happened. I mean, it really doesn't take a hawk's eye. It doesn't. You're right. It doesn't take much to infer. But would you admit there is a Bruton violation here? No, I won't admit there is a Bruton violation under pre-Gray Law. Well, Marsh says not only redact his name, but also his very existence. This is the language of Marsh. We hold that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. That is the holding. Now, that didn't happen here, did it? The jury in Marsh didn't even know she existed, right? As far as the statement. Based on the four corners of the statement? No. Okay. Didn't know how many others. Right. Didn't know how many were even there. So Marsh, by its language, by its statement, we hold says a redaction that eliminates not only the defendant's name, but any reference to his or her existence. And it's undeniable that that is not the character of the redaction here, correct? That's correct. Well, then how does Richardson get you out from under? I disagree with your interpretation of the holding of Marsh. It says we hold. The holding of Marsh says when you've got elimination of all references to the existence of this person, that's sufficient under Bruton. It doesn't say that that's necessary to the redactions. And when you – and nothing in Marsh suggests that this inquiry depends on the number of potential actors. And then you've got in footnote five where they explicitly reserve the question of whether a symbol or blank space files through. Who could have thought X was? Who could the jury have thought X was? There's no question. The jury could have sat there and thought, you know, this X could be Michael Rainey. There are only two defendants sitting at the defense table. Who else could it have been? But that's not the question that Bruton raises. Well, it really is at the heart of Bruton. It's at the heart of Bruton. Well, Bruton is a very narrow exception to the presumption that's applied in almost every other instance that the jury can follow instructions. It's that the jury cannot get away from the fact that if you are clear that the co-defendant is implicating the defendant that's before the court, that there's a confrontation cause problem. And the point is being put to you and put to you repeatedly, Mr. VanLaney, how could it not have been clear? Who else could possibly have been X given that there were three people, two named by name, and the one wasn't named by name is Rainey? Could any person competent to sit on a jury not have understood that it was Rainey without any other evidence, no other evidence? As I said, Your Honor, take a look at footnote three of Marsh. I've taken a look at footnote three of Marsh. The explanation is we, of course, a jury can look at this. The jury could look at the co-defendant's statement in Marsh and use that as evidence that this happened. And, oh, she was there when they find out. She's sitting at the defense table, too. And they can easily determine that, oh, she was there. She was in the car. She heard this conversation. She knew it was going to happen. Mr. Dunleavy, before we move to Maharmazir, which at least from my point of view is where it's at in this case in which you were quite ready to move to at the outset, I can't help but observe that what took place in a trial courtroom right now a generation ago, that's the nature of habeas cases procedurally, I'm afraid, was probably inappropriate even simply in the wake of Bruton without the kind of further development we've had from the Supreme Court with Richardson versus Marsh and subsequently Gray. And frankly, it was a little troubling to me to read this record and see, and again, the people who were in the trial division of the DA's office back then are probably retired or moved on somewhere by now. But when this statement was presented, it hadn't even redacted as should have been quite evident to any prosecutor it was going to be necessary, but instead they had to take the time at trial. Okay, that's all passed. As Judge Jordan's and Judge Rendell's questions suggest, what probably was not an excusable error back at that time becomes even more difficult to accept when the appellate division is trying to defend the indefensible at this point. And maybe that's what you were trying to do when you wanted to move on to harmless errors. Your Honor, if I could, I'm specifically referring to and assuming the prosecutor's alleged use of the statement in argument or the detective's mistake. As the questions suggest, there seems to be very little other evidence, even if it was very little, a very weak inference, even if there was an inference, a very strong inference, I'm sorry, as opposed to just a direct pointing of the finger to Mr. Rainey here in that statement. So it's hard for me to understand how a prosecutor would not have recognized at the time, simply in the way of proof, that this was not a correct way to put a co-defendant's statement in front of a jury, if you put it in front of a jury at all under the circumstances. But it was a generation ago. Why it is being pursued as an argument now, or why the appellate division is pushing it as a viable argument now, that somehow this was permissible, is beyond me. But that's just my viewpoint. Yeah. I guess what we're saying is we probably should have let you go to harmless error. I was going to suggest that to Judge Jordan, actually. But, you know, it's just a little hard to swallow. But with all due respect, John, I— We're taking your time, and might as well get to it. You've got six and a half minutes to talk about harmless error. As to harmless error, Your Honor, I think Judge Rendell recognizes that the medical examiner's testimony alone establishes specific intent to kill. You don't need a plan— That's the law. I mean, the facts that he induced are the law of Pennsylvania, that you presume the intent, where you have that kind of a gunshot wound. That kind of injury. And it's not just the wound itself, either. It's Alvin Morgan, whose testimony really— There's no headway made in efforts to impeach him at trial. He's telling you from beginning to end, I was with Michael Rainey. He's Rainey's good friend. He testified to that, that he was closer to Rainey than he was to Williams. Absolutely. He's been friends with him for years. What's interesting, though, is neither Williams nor—what's Kevin's last name? Kevin Lewis. Kevin Lewis. Neither Lewis nor Morgan has the gun actually at the person's back. The forensic does, the rifle, the sawed-off shotgun. The forensics did, but neither of the others had them three feet away or whatever. I think Morgan said he was three feet away. Kevin Lewis was a few houses away. It's a well-lit street at that point. I think one of the crime scene specialists testified to the lighting. But, I mean, they didn't testify that the gun was right up against the back, which is what the forensics showed. Right. But the other is—the forensics are very clear. I don't see from this— It's the outline of the gun. Right. And it's remarkable. This isn't just— The piece of the wadding was found in the victim's back. Right. Right. And the slug itself, which is kind of rounded. You load that into a 20-gauge shotgun, and you're standing behind this person. Michael Rainey is essentially lying in wait here. He's standing over here. He knows that when Williams knocks on the door, the victim's going to come out. The victim approaches Williams. Rainey's standing right there. He presses the gun to his back and fires it. He's loaded it with a slug. That kind of round is meant to kill. And there's no other possible outcome to this. He's shooting the slug into the back of a 72-year-old man. And I think Alvin Morgan, just his testimony he's talking about, if there was no specific plan to murder this man, Michael Rainey was more than happy to do it. He told George Williams and Alvin Morgan, hey, if I have to shoot someone, I'm going to shoot him. And then he loads the weapon right before he arrives. If this was just a robbery, there's no need to do that. We'll talk for a moment about substantial and injurious effect, the Brecht standard that we have to apply here. Even if we say, yes, there's sure some pretty potent evidence about intent and Rainey being the trigger man, but the introduction of the Williams statement in a way that made it good and clear that Rainey was the person that Williams was talking about, that had to have added some weight to the scale or the prosecutor wouldn't have gone to the trouble of using it, right? So the question is, did it add substantial weight or injurious weight from Rainey's perspective to the scale, correct? Well, I think that's the question if you're assuming, if you're already concluding that the prosecutor was actually trying to use it against Rainey. And I don't think he was. I think if you read the testimony carefully, he's careful to preface his argument. And he has to do this. What difference does the prosecutor's intent make here? It's in front of the jury. They have the statement, okay? They have the evidence. So the question that Judge Jordan has asked is, what about the weight? I mean, at the very least, what you do have is that the statement really doesn't add anything new in that respect, right? Right. But what about the additional corroboration? Does that add sufficiently more weight to make it problematic? I don't think so. I think in almost every Bruton case, the confession that's being challenged as a Bruton violation is going to corroborate other evidence in some way. This isn't adding something, a new element, as I think in Washington and some of the other cases that this Court has decided. It's not filling the gap in any of the evidence. You've already got everything from Alvin Morgan. Alvin Morgan's a credible witness, and Kevin Lewis corroborates what Alvin Morgan has to say. The forensics corroborate what Morgan has to say. And I think it adds very little weight, particularly when the jury is being presented with this instruction from the Court and the way the prosecutor argues this. And he's talking about, I realize he mentions the long black trench coat, but the point of that is to establish that the only real question at this trial, which is what did George Williams know? What was his state of mind before this happened? Morgan pled and hadn't been sentenced yet, correct? Correct. And Lewis was never charged with anything? That's correct. So we don't have a lot of ways we could say the jury could have discounted their testimony based on bias. And Morgan was his closest friend as well. That's right. And their testimony that Michael Rainey was the one who shot this man in the back is entirely consistent with what they told detectives from two weeks after the murder. That's exactly what they told detectives. The only difference was over Williams' intent, what he knew. Was he handed this gun? Did he know it was inoperable or not? Query. Do you know why the Rainey statement was never used at trial? Did you find anything in the case files suggesting that? I think my suspicion is it wasn't introduced because he said he places the blame back on Williams, which is what Williams does to him. Yet the prosecutor is waiting. If Rainey is going to suggest, oh, I was never there, and later on Rainey says my trial counsel is ineffective for not presenting an alibi. If he had done that, it's almost a certainty the prosecutor is going to introduce that statement because he's going to say, hey, look, he's telling you he wasn't there. He told the detectives he was. But the case was more about premeditation. Right. Thanks very much. Ms. Williams? Thank you. I'd just like to address your point about additional corroboration. I think that the statement did add additional corroboration, additional weight to the prosecutor's case. But it didn't add anything new to the equation, did it? Right. But I think the prosecutor was aware of the deficiencies in his case, or he wouldn't have argued that the statement corroborates Alvin Morgan's testimony. Well, surely he thought those were something. But let me ask you this. What is our responsibility under AEDPA to look at the Pennsylvania Supreme Court's statement that this was harmless error? They said it was harmless error in effect, right? They did. I think under Davis, the Supreme Court made clear that the Brecht standard subsumes AEDPA deference. So if you find that the statement had a substantial and injurious effect on the trial, you've addressed the question of deference. I don't think you need to do anything additional. And as I stated earlier, that the Pennsylvania Supreme Court's position was predicated on the fact that they didn't think that Brun had been violated at all. They said that, you know, it's a contextual implication or the detective. Well, wasn't their decision in the end sort of an even if? In other words, they may not have thought there was a Bruton error, but in the end they said it's harmless because of these other things. So doesn't that really make the case from their perspective and from ours whether that harmless error decision was an accurate one? I think this court has to look at harmlessness again. Do you know? What do you mean again? I think that the federal court does its own harmless error analysis under Brecht. And nothing about Davis sort of changes that. AEDPA doesn't. Fry stole the standard so that the court looks to harmlessness and whether if you find that the error was harmful, then you've addressed AEDPA. And I think that the error was harmful. The witnesses against Mr. Rainey were not credible. The prosecutor even said you can't trust. How were they not credible? I just mentioned Morgan was his best buddy. Right, but Alvin Morgan was unsentenced, looking at a range from five years to 50, depending on how well he testified. The prosecutor told the jury in closing arguments he can't believe anything Kevin Morgan says. He's got deficiencies as a witness. How about Lewis? He didn't have an axe to grind, did he? He didn't have an axe to grind, but the prosecutor said he's not the best witness. He has deficiencies. He's trying to lessen the blame on George Williams. And so the statement really is at the heart of the prosecutor's case. That's why he brought it in. That's why he argued throughout closing arguments using the statement. There was a plan to rob the old man up the street. That is directly from the statement. And then he told the jury that if you don't believe my witnesses, the statement corroborates what they told you, and that's why the error was harmful. Thank you. Thank you very much, Ms. Williams. Out of just curiosity, the Castile involvement here, Justice Castile and the prosecution, would the Supreme Court opinion have any bearing on maybe a retrial in this case? I am unclear as to that. He was not the prosecutor at trial, and I don't know if he was the head of the office at the time. Just curious. Thank you. Thank you. And Mr. Dunleavy, thank you. We'll take the case under review.